IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND MATHIS, | ) | |
| AIS 140252, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:20-CV-41-RAH-CSC |
| | ) | |
| MS. CONNIE, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.   INTRODUCTION

Plaintiff Raymond Mathis, an inmate incarcerated at the Loxley Work Release Center in Loxley, Alabama, brings this *pro se* 42 U.S.C. § 1983 action alleging a violation of his federally protected rights. Doc. 1. The Complaint is filed against Connie Hinson who is employed as a nurse at the Houston County Jail ["HCJ"] in Dothan, Alabama.  Plaintiff seeks $500,000 in damages for the alleged violation of his rights and requests Defendant be relieved of her duties.  Doc. 1 at 2–4.

Pursuant to the Court's Orders, Defendant filed an Answer, Special Report, and supporting evidentiary materials addressing Plaintiff's claims for relief.  Doc. 18. In her report, Defendant denies she acted in violation of Plaintiff's constitutional rights. *See Id.* Defendant also raise the defense of exhaustion arguing this case is due to be dismissed because Plaintiff failed to properly exhaust the administrative remedy available to him at the county jail prior to filing suit.  *See Jones v. Bock*, 549 U.S. 199, 202 (2007) (emphasis

added) (finding that the Prison Litigation Reform Act ("PLRA") requires "inmates complaining about prison conditions exhaust prison grievance remedies **before** initiating suit."). Defendant bases her exhaustion defense on Plaintiff's failure to comply with the jail's internal administrative remedy procedure for its inmates regarding the claim presented in this matter. Doc. 18 at 5–7.

Upon receipt of Defendant's answer, special report, and evidentiary submissions, the Court issued an Order on June 26, 2020, providing Plaintiff an opportunity to file a response. Doc. 20. This Order directed Plaintiff to address Defendant's argument that "he failed to fully exhaust his administrative remedies available. . . as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") [prior to filing this federal civil action]." *Id.* at 1 (footnote omitted). The Order also informed Plaintiff his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id.* at 2–3. Finally, the June 26, 2020, Order advised Plaintiff that unless "sufficient legal cause" is shown within ten days of entry of the Order why such action should not be undertaken, the Court may at any time after expiration of the time for his filing a response to the June 26 Order and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a dispositive motion and (2) after considering any response as allowed by said Order, rule on the motion in accordance with law. *Id.* at 3.

Plaintiff filed a response to Defendant's special report. Doc. 25. In response to Defendant's exhaustion defense, Plaintiff maintains that dismissal of this action for his failure to exhaust the administrative remedy provided by HCJ would be an injustice. *Id.* at 2. Specifically, Plaintiff maintains he was impeded in his ability to exhaust the grievance process because (1) the grievance officer—Office Downs—refused to let inmates appeal grievances to the Commander or Sheriff of HCJ (Doc. 25 at 2) and (2) Officer Downs allowed inmates one grievance and thereafter would denote it as a "non-grievance" which Plaintiff contends meant an inmate could not appeal the grievance (Doc. 25 at 2).  Because of Officer Downs's conduct, Plaintiff infers he still attempted to appeal his grievances by sending copies of them to his wife so she could then mail them to the attention of the Commander of HCJ and other jail officials (Doc. 25 at 2; Doc. 25-1 at 1–3).

To support her special report, Defendant produced her affidavit,  jail records, and the  affidavit of James Brazier, Commander of HCJ. These evidentiary materials refute Plaintiff's claims that he exhausted HCJ's administrative remedy procedure and reflect that during the time relevant to the allegation made, he had access to the grievance process. Doc. 18-1 at 34-38, Doc. 18-2 at 8, Doc. 18-3 at 2–3.

Pursuant to the directives of the Order entered June 26, 2020 (Doc. 20), the Court now does treat Defendant's special report as a  motion to  dismiss regarding the exhaustion defense as to the unexhausted claim. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted) (holding that "an exhaustion defense . . . is

not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *see also Trias v. Fla. Dep't. of Corr.*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed a defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies").

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust any administrative remedies available to him before filing a suit in federal court based on alleged violations of his constitutional rights or other federal laws. Specifically, § 1997e(a) directs that:

> [n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

*Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999). In addressing the requirements of 42 U.S.C. § 1997e(a) exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id*. (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's

4

amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison . . . must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original).

Furthermore, "the question of exhaustion under the PLRA [is] a threshold matter that [federal courts must] address before considering the merits of the case. Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement." *Myles v. Miami-Dade Cnty. Corr. & Rehab Dep't.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander*, 159 F.3d at 1325–26)). The Court will therefore "resolve this issue first."

"When deciding whether a prisoner has [properly] exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues

related to exhaustion.' *Id*. (*citing Bryant*, 530 F.3d at 1373-74, 1376)." *Myles*, 476 F. App'x at 366. Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535. Based on the foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as to exhaustion should be decided" only after a trial either before a jury or judge. *Id*. at 534.

Upon review of the Complaint, Defendant's dispositive motion and evidentiary materials filed in support thereof, and Plaintiff's response, the undersigned concludes Defendant's motion to dismiss is due to be granted.

## III.   DISCUSSION[1]

Plaintiff filed this § 1983 Complaint on January 16, 2020, challenging the adequacy of medical care he received while a detainee at HCJ. He alleges Defendant refused to give him his daily medication on January 6, 2020, because was not at the pill call line on time. Doc. 1 at 3. Plaintiff contends, however, that the facility's rules and regulations prohibit

---

[1] To the extent Plaintiff's opposition presents additional allegations of constitutional violations that were not affirmatively pled in his Complaint, they are not properly before the Court as Plaintiff may not "amend" his Complaint through his opposition by raising a new claim. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *see also Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not amended the complaint).

nursing staff from choosing to whom they will dispense medication. *Id.* Defendant denies Plaintiff's allegation and further argues this case is subject to dismissal because he failed to properly exhaust the administrative remedy provided at the jail for inmates to seek review of any aspect of their confinement prior to filing a complaint as required by the PLRA, 42 U.S.C. § 1997e(a). Doc. 18 at 5–7.

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court in a § 1983 action.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways.  Exhaustion is no longer left to the discretion of the district court, but is mandatory.  Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards.  Indeed, as [the Supreme Court] held in *Booth*, a prisoner must now exhaust administrative remedies even where

the relief sought—monetary damages—cannot be granted by the administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander*, 159 F.3d at 1325. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016). However, "[a] prisoner need not exhaust remedies if they are not available." *Id.* at 635 (internal quotation marks omitted). Generally, a remedy is "available" when it has "sufficient power or force to achieve an end,[or is] capable of use for the accomplishment of a purpose[.]" *Booth*, 532 U.S. at 737 (internal quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 90–91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison

Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. *Id.* at 83-84; *Bryant*, 530 F.3d at 1378 (explaining that to exhaust administrative remedies in accordance with the PLRA, prisoners must "properly take each step within the administrative process."); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (observing that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that HCJ provides an administrative remedy procedure to resolve inmate complaints regarding any aspect of their confinement. Doc. 18-2 at 8, Doc. 18-3. Plaintiff does not challenge the availability of a grievance procedure at HCJ during his incarceration at the facility. *See* Doc. 25. Generally, Defendant's evidence demonstrates that HCJ provides an administrative remedy for inmate complaints in the form of an inmate grievance procedure. Doc. 18-2 at 8, Doc. 18-3 at 2. Plaintiff received a copy of the Inmate Handbook governing inmates at HCJ when he was booked into the facility on December

13, 2019, which contains information regarding the facility's grievance procedure. Doc.

18-1 at 11.  The grievance procedure applicable to the claims presented by Plaintiff allowed

him the opportunity to submit grievances regarding conditions occurring at HCJ.  HCJ's

grievance procedure provides that inmates may express complaints by submitting a

grievance to jail staff. Doc. 18-2 at 8, Doc. 18-3 at 2. The jail provides kiosks for inmates

to submit grievances forms. *Id.* Commander Brazier  testifies in his official  capacity as

Commander of HCJ that

> When an inmate has a grievance, the inmate may submit a grievance to jail
> staff. Inmates use a kiosk to submit grievances and other types of
> communication to jail staff. If a kiosk is not functioning, inmates are
> provided with paper forms to communicate with jail staff. A grievance will
> be promptly investigated and answered by a member of jail staff. Most
> grievances are answered by the grievance deputy. Grievances of an
> emergency nature may be made orally and are handled immediately. No
> negative action will be taken against an inmate as a result of filing a
> grievance. If an inmate is dissatisfied with the response to the grievance, he
> or she may make a series of appeals in writing up the chain of command to
> the Sheriff.
>
> A copy of the Houston County Jail Inmate Rulebook, which contains
> instructions for submitting a grievance and other jail rules, is issued to each
> inmate as part of the booking process. Inmates, including Plaintiff, are well
> aware of the grievance procedures in place in the Houston County Jail.

Doc. 18-3 at 2. Commander Brazier also testifies

> I have never received an appeal from the Plaintiff regarding any grievance
> that he has filed regarding the allegations of his Complaint. The Plaintiff
> closed his relevant grievances after he received a response and did not appeal
> them. I never refused to accept an appeal form from the Plaintiff in writing
> or through the kiosk grievance system.

Doc.  18-3 at 2–3.

Defendant's evidentiary submissions reflect that Plaintiff submitted a grievance on January 7, 2020, complaining that Defendant did not give him his blood pressure medication on January 6, 2020. Doc. 18-1 at 34. Officer Downs responded to Plaintiff's grievance on January 8, 2020, explaining that Plaintiff had remained at a table playing cards when the nurse and a jailer arrived at his area despite the prior announcement given to inmates that they were required to be at the door when medical and jail staff arrived to dispense inmate medication. *Id*. On January 16, 2020, Plaintiff closed out the grievance— which he does not refute—and by that time, any appeal would have been untimely under the jail's grievance procedures. *Id.*

Plaintiff argues that Officer Downs's would denote a grievance on the kiosk as a non-grievance to support his contention that he could not submit an appeal via the kiosk. Doc. 25 at 2. Review of Plaintiff's grievance records where the word "non-grievance" is used—albeit not the grievance applicable in this case—shows it is in reference to the fact that a grievance was untimely submitted. *See e.g.,* Doc. 18-1 at 35.  Plaintiff also argues that  because he "was not allowed to appeal through Officer Downs," he took the "next step" by mailing written grievances to his wife to mail back to jail officials. Doc. 25 at 2. Plaintiff submits Exhibit 1 (Doc. 25-1) as support for this but it fails to demonstrate exhaustion as it was not compliant with the jail's administrative procedures much less reliable evidence of what he describes. Further, as noted, HCJ's grievance procedure allows an inmate dissatisfied with a grievance response to submit a *written* grievance up the chain

of command. Doc. 18-3 at 2. Plaintiff fails to explain how the conduct he ascribes to Defendant Downs interfered with his ability to submit a written appeal to the next jail official in the chain of command or interfered with or impeded his ability to pursue this particular part of the grievance process. Moreover, Defendant's evidence shows Plaintiff freely and routinely accessed the jail's grievance process via the kiosk and based on his own evidence, he had the ability to craft a written grievance or grievance appeal. Doc. 25-1 at 1–3. Plaintiff's failure to exhaust the grievance process therefore was not, as he claims, because he was unable to file—or was precluded from filing—a grievance appeal based on Officer Downs's alleged conduct, but  rather, stemmed from his own lack of follow-up in undertaking all the necessary steps to properly exhaust the available administrative remedy.

Here, the evidentiary record demonstrates Plaintiff had an administrative remedy available to him during his confinement at HCJ, but he failed to properly exhaust the facility's administrative remedy process with regard to the claim presented. Specifically, despite the availability of an administrative remedy procedure and his access to it, Plaintiff failed to file an appeal from the grievance made the subject matter of this action in accordance with the HCJ's grievance procedure. Plaintiff's conclusory and unsupported allegations not only do not justify his failure to exhaust the jail's administrative remedy during the time it was available to him but also fail to overcome Defendant's evidence showing that a grievance system was available at the facility and that he failed to properly exhaust the administrative remedy available to him within the appropriate channels. *See*

*Woodford*, 548 U.S. 90-91 (to exhaust administrative remedies, an inmate must comply with all steps prescribed by the jail's grievance system); *see also Twitty v. McCoskey,* 226 F. App'x. 594, 596 (7th Cir. 2007) (observing that inmate failed to avail himself of the administrative remedies which existed to redress his claims where he made his complaints "outside the channels of the [jail's formal] grievance procedure."). Any grievances filed after initiation of this suit do not effect Plaintiff's proper exhaustion of the administrative remedy provided by the jail. *Terry*, 491 F. App'x. at 83.

Review of the proceedings in this matter show the administrative remedy is no longer available to Plaintiff because he is no longer incarcerated at HCJ. *See* Docs. 28–30 (Notices of Change of Address)*.* Dismissal with prejudice is therefore appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (holding that "[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (holding that inmate's "federal lawsuits [were] properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

## IV.    CONCLUSION

For the above stated reasons, the undersigned Magistrate Judge RECOMMENDS that:

1.      Defendant's motion to dismiss (Doc. 18) be GRANTED to the extent Defendant seeks dismissal of this case due to Plaintiff's failure to properly exhaust an administrative remedy prior to initiating this cause of action.

2.      This case be DISMISSED with prejudice under 42 U.S.C. § 1997e(a).

3.      Judgment be ENTERED in favor of Defendant.

4.      Other than the filing fee assessed to Plaintiff in this case, no further costs be taxed.

It is ORDERED that **by December 15, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made.  Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon

14

grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH Cir. R. 3–1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, this 1st day of December 2022.

/s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE